UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN WHITE,

    Plaintiff,

Case No:

vs.

STATE NATIONAL INSURANCE
COMPANY and STAR INSURANCE
COMPANY,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KEVIN WHITE, by and through undersigned counsel, sues the Defendants, STATE NATIONAL INSURANCE COMPANY and STAR INSURANCE COMPANY, and states:

1. The plaintiff is a citizen of Florida. The defendants are corporations incorporated under the laws of a state other than Florida with their principal places of business in a state other than the state of Florida. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. §1332.

## COUNT I – BAD FAITH
(Violation of F.S. §624.155)

2. This is an action brought by an insured against an insurer pursuant to Florida Statute §624.155 which provides for a civil remedy against bad faith insurer business practices.

3. White was an insured under a Commercial General Liability insurance policy issued by SNIC to Hillsborough County, Florida (the "County"), Policy Number MDB 02676 27,

effective 10/1/06-10/1/07 (the "SNIC Policy"), which provided coverage to the County, its employees and public officials.

4. White was an insured under a Commercial General Liability insurance policy issued by Star to the County, Policy Number CP 02677 43, effective 10/1/07-10/1/08 (the "Star Policy"), which provided coverage to the County, its employees and public officials. True and correct copies of the SNIC Policy and the Star Policy (referred to collectively hereinafter as, "the Policies") are attached as Exhibits "A" and "B."

5. While the Policies were in full force and effect, a civil rights claim was brought against White and the County by one of White's aides, which was a covered claim under the Policies.

6. By issuing the above-referenced Policies to the County and by accepting the premiums, Defendants owed to White, an insured under the Policies, a duty of good faith and a duty to treat White honestly, fairly, and with due regard for his interests as provided for in Florida statutory law.

7. White and the County subsequently made a claim for policy benefits. Defendants partially indemnified the County for its damages but wholly refused to indemnify White for policy benefits which resulted from the claim.

8. Rather, knowing that White's claim was wholly valid and that White should be indemnified for the costs of his legal defense in the underlying civil rights action, Defendants wrongfully breached Fla. Stat. §624.155 *et seq.* and Fla. Stat. §626.9541, by withholding and denying White benefits due to him under the Policies.

9. In denying White's claim for benefits under the Policies, the Defendants' conduct was willful, wanton and malicious, or was in reckless disregard for White's rights as an insured.

10. For example, on or about November 23, 2009, Paul Meleedy, Assistant Vice President, Excess Claims Department, for Meadowbrook Insurance Group, the Claims Administrator for SNIC, wrote to Steven G. Wenzel, Esq., attorney for White in the underlying civil rights litigation, to state, *inter alia*, that "there is no potential for coverage [for White] in connection with the [underlying] suit, and accordingly disclaims coverage for [White's] claim for reimbursement of costs associated with the litigation.

11. In response to the County's claim for benefits under the same Policies, however, on or about November 23, 2009, Paul Meleedy also wrote to Christina Swanson, Director of Human Resources & Risk Management for Hillsborough County, to state, *inter alia*, that "there are questions concerning coverage for this matter which require further clarification."

12. In both the November 23, 2009 letter to Steven G. Wenzel, Esq. and the November 23, 2009 letter to Christina Swanson, Paul Meleedy wrote that "Meadowbrook is unaware of any covered claims relating to the [underlying] suit that exceed the $350,000 self-insured retention requiring SNIC's policy to respond. More specifically, the jury award to Ms. Ogden is excluded from coverage, along with the fees incurred by Ms. Ogden in prosecuting the suit against Hillsborough County [and White.]"

13. Despite the November 23, 2009 representation, by and through Paul Meleedy, acting within the course and scope of his employment or agency for Meadowbrook, that Meadowbrook was "unaware of any covered claims relating to the suit that exceed the $350,000 self-insured retention," Meadowbrook and the Defendants were aware, as early as October 13, 2009, as reflected in e-mail correspondence from John Eule, Senior Claims Rep/Excess Claims Department, for Meadowbrook Insurance Group, the Claims Administrator for SNIC, to Javier Melendez, Senior Adjuster for Johns Eastern Company, Inc., the Third Party Claims

Administrator for Hillsborough County, and in a separate e-mail correspondence of the same date to Paul Velasco, Claims adjuster for Johns Eastern Company, with a copy to Paul Meleedy, et al., that the County had expended $490,989.18 for the combined insured damages and insured allocated costs and expenses of investigation, defense, negotiation and settlement applicable to such damages in the underlying litigation.

14. Further, as early as October 13, 2009, as reflected in the e-mails referenced in the preceding paragraph, SNIC had already agreed to pay $65,989.18 to the County, which represented the difference between the County's aggregated out-of-pocket damages in the underlying litigation, $490,989.18, less the $350,000 deductible, and less the $75,000 paid as damages to the plaintiff in the underlying litigation, which SNIC regarded as an "uncovered claim."

15. In view of the foregoing, the November 23, 2009 letter from Paul Meleedy to Steven G. Wenzel, Esq. willfully misrepresented and omitted pertinent facts and misrepresented insurance policy provisions relating to coverages in a manner which reflects a resolute and calculated decision by the Defendants to deny insurance benefits to White, when Defendants were fully aware, as reflected by the Defendants' decision to partially indemnify the County, that insurance benefits were due and owing to White according to the terms of the policy.

16. By steadfastly refusing to indemnify White, who, as an insured under the Policies, should have been afforded all of the same rights to indemnity as the County, Defendants acted with malice and oppression towards White, in a conscious effort to capitalize on the fact that White had become a disgraced ex-public official, in order not to pay a claim which was properly within coverage bought and paid for by the County taxpayers and which expressly provided protection in the event a public official committed a wrongful act.

17.     Defendant SNIC's willfulness in wrongfully singling out White for the denial of benefits is underscored by the inclusion of Paragraph 4 of the Settlement and Mutual Release Agreement between Defendant SNIC and the County, which paragraph states:

> 4.      <u>No Coverage For Board Member White</u>. Consistent with the foregoing, and with SNIC's stated declination of coverage to Board of County Commissioner Kevin White (White), in connection with the Action, should the County for any reason reimburse White for any costs, defense, indemnity or otherwise, incurred by White in connection with the Action, the County shall not seek reimbursement from SNIC for any such payment to White.

A true and correct copy of the Settlement and Mutual Release Agreement is attached as Exhibit "C."

18.     As consideration for excess insurance coverage for the wrongful acts of public officials afforded by the Policies, the County prepaid Defendants an annual premium of $479,000. By settling with the County, while resolutely declaring that coverage for White was excluded, the Defendants acted in a calculated manner which reflected that profit motive was of paramount importance, as the Defendants' conduct was motivated by its desire to keep the County as a customer, and to retain the enjoyment of a $479,000 annual premium, rather than to act fairly, honestly and with regard to the interest of all of their insureds and provide for the full coverage paid for by the taxpayers of Hillsborough County.

19.     By failing to honor the Policies' provisions which provide coverage for the wrongful acts of public officials, Defendants set in motion a pernicious scheme which, if left undeterred, would essentially deprive the Hillsborough County taxpayers of the benefit of coverages for which they are paying an annual premium of $479,000, and which are not triggered until the County has already expended $350,000 with respect to any one occurrence. If the Policies did not provide coverage for the defense of wrongful acts of public officials, even after the $350,000

self-insured retention was satisfied, the insurance policy would be, in essence, illusory, or worthless to the taxpayers of Hillsborough County.

20. Despite White's requests that Defendants act in good faith and indemnify his costs of defense in the underlying litigation, Defendants failed and refused to indemnify White. Rather, Defendants filed a declaratory action in this judicial forum on April 16, 2010, Case No. 10-894-JDW/TBM, in an attempt to vindicate their asserted position that they could deny coverage to White under the terms of the Policies.

21. On June 1, 2010, White filed Civil Remedy Notice 158584 against SNIC to place SNIC on statutory notice of, *inter alia*, its failure to act fairly and honestly toward White, its insured, and its failure to act with due regard for his interests. A true and correct copy of Civil Remedy Notice 158584 is attached as Exhibit "D."

22. On June 1, 2010, White filed Civil Remedy Notice 158587 against Star to place Star on statutory notice of, *inter alia*, its failure to act fairly and honestly toward White, its insured, and its failure to act with due regard for his interests. A true and correct copy of Civil Remedy Notice 158587 is attached as Exhibit "E."

23. The declaratory action was resolved by summary judgment in favor of White and the insurers were ordered to indemnify White for, *inter alia*, the costs of his defense in the underlying civil rights action.

24. Defendants breached their statutory duty of good faith to White by:

    a. Not attempting in good faith to settle claims when, under all the circumstances, they could have and should have done so, had they acted fairly and honestly toward their insured and with due regard to his interests;

      b.      Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

      c.      Except as to liability coverages, failing to promptly settle claims, when the obligation to settle a claim has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

      d.      Failing to adopt and implement standards for the proper investigation of claims;

      e.      Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

      f.      Failing to acknowledge and act promptly upon communications with respect to claims;

      g.      Denying claims without conducting reasonable investigations based upon available information;

      h.      Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed;

      i.      Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to facts or applicable law, for the denial of a claim; and

      j.      Failing to notify the insured of any additional information necessary for the processing of a claim.

25. Defendants' acts were committed or performed with such frequency as to indicate a general business practice and these acts were conducted in reckless disregard for the rights of the insured, which entitles White to punitive damages pursuant to Fla. Stat. §624.155.

26. Plaintiff has complied with all conditions precedent necessary to maintain this cause of action for bad faith against SNIC and Star.

27. These breaches of the duty of good faith owed to White by the Defendants constitute insurance bad faith under the statutory laws of the State of Florida.

28. A determination of the existence of liability on the part of the Defendants and the extent of White's damages has been determined by the judgment entered on November 21, 2011, in Middle District of Florida Case No. 10-894, at Docket Entry No. 88.

29. As an insured under the Policies, White has standing to sue Defendants pursuant to Fla. Stat. §624.155.

30. As a direct and proximate result of the Defendants' bad faith insurance practices, White has suffered damages in the form of special and consequential losses of credit and credit worthiness, damage to personal good will and reputation, loss of income and earning capacity; inconvenience, mental suffering and mental anguish, for which White seeks compensatory and punitive damages.

31. White has retained undersigned counsel to represent him in connection with this action, and is, upon entry of a judgment in his favor, entitled to recover the reasonable value of his services from the defendant pursuant to Fla. Stat. §§ 627.428 and 624.155.

**WHEREFORE**, Plaintiff, KEVIN WHITE, demands judgment for damages against Defendants, STATE NATIONAL INSURANCE COMPANY and STAR INSURANCE

Company, in excess of the jurisdictional limits, together with punitive damages, costs and attorneys' fees, and any such other relief that the court may deem proper.

## DEMAND FOR JURY TRIAL

White demands trial by jury of all issues so triable.

Respectfully submitted,

/s/ *Michael V. Laurato*
MICHAEL V. LAURATO, ESQ.
Florida Bar No. 181447
AUSTIN & LAURATO, P.A.
1902 W. Cass Street
Tampa, Florida 33606
(813)258-0624
(813)258-4625 Facsimile
mlaurato@austinlaurato.com
TRIAL COUNSEL